**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GIMME GOLF TOOL LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**COSMOSE,**<br><br>Defendant. | Civil Action No.: 25-cv-14536<br><br>Honorable Judge Joan B. Gottschall<br><br>Magistrate Judge Maria Valdez |

**AMENDED COMPLAINT**

Plaintiff Gimme Golf Tool LLC ("Plaintiff") hereby sues the individual, partnership, or unincorporated association as delineated on Schedule A hereto, cosmose ("Defendant"), alleging as follows:

**INTRODUCTION**

1. This action has been filed by Plaintiff to combat the e-commerce store who trades upon Plaintiff's reputation and goodwill by advertising, offering for sale, and selling unauthorized and unlicensed products, mainly including golf products, using infringing and derivative versions of Plaintiff's federally registered copyrights VA 2-450-964 and VA 2-450-965 (the "Infringing Products"). Defendant creates e-commerce stores operating under one or more Seller Alias that are advertising, offering for sale, and selling Infringing Products to unknowing consumers. Defendant attempts to avoid and mitigate liability by operating under one or more Seller Alias to conceal both their identity and the full scope and interworking of their infringing operation.

2. Plaintiff is forced to file this action to combat Defendant's infringement of its federally registered copyrights as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3. Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, diminished goodwill and brand confidence, damage to Plaintiff's reputation, damage to Plaintiff's creative content, and loss of exclusivity in its valuable copyrights rights as a result of Defendant's actions and seeks injunctive and monetary relief.

**PARTIES**

4. Plaintiff is a United States Limited Liability Company with a principal place of business of 3204 Hawthorne Ct., Plant City, FL, 33566.

5. Plaintiff created and is known for their unique golf accessory – the "Gimme Golf Tool."

6. Plaintiff manufacturers the Gimme Golf Tool in the Unites States, specifically Plant City, FL.

7. Plaintiff's Gimme Golf Tool was conceived on a golf course with a bunch of friends, who brought along customary golf refreshments: canned beverages and cigars.

8. The group's adventure first started with a celebratory 'shotgun' – which includes puncturing the side of a can to drink its contents. However, the group had to use miscellaneous, incompatible items to puncture the cans, including keys, tees, and even teeth.

9. The group's adventure also included cigars, which were set on the golf cart's cup holders or even on the ground when not in use. However, such locations were not secure, leading to the loss of some cigars, burn out of some cigars, and general inability to properly enjoy a cigar throughout the golf round due to no proper mechanism or location to hold the cigars.

10. The group's adventure also included landing golf shots on the greens, a softer, smooth surface found on each hole of a golf course. Such greens can absorb golf ball momentum, resulting in divots when impacted. As is customary, the group utilized proper divot fixing devices to ensure the green was properly fixed and maintained.

11. As a result of these adventures, the need for a singular device to accommodate these golf activities was realized, and Plaintiff's Gimme Golf Tool was conceived.

12. Plaintiff spent much time and money in design, testing, and general R&D, from which the Plaintiff's Gimme Golf Tool was formed.

13. Plaintiff's Gimme Golf Tool does the task of fixing a ball mark, holding players' cigars – whether in the golf cart securely via magnet or on the ground via the divot prongs, and properly puncturing a can to 'shotgun'.

14. Plaintiff is the owner of United States copyright Reg. Nos. VA 2-450-964 and VA 2-450-965 (hereinafter "Plaintiff's Copyrights" or "Copyrights-in-Suit"). *See* **Exhibit A**. A true and correct copy of Plaintiff's Copyrights registration is attached as **Exhibit A**.

15. Plaintiff spent significant time and resources on advertising or otherwise promoting the Plaintiff's Copyrights. Plaintiff's average monthly investment in Plaintiff's Copyrights, and other copyrights, and respective product is about $1,250.00.

16. Through extensive advertising, Plaintiff amassed over 5,000 followers on Instagram.

17. Plaintiff's target customer group includes any and all people who golf, enjoy cigars, drink, and/or enjoy the outdoors.

18. Plaintiff's main sales channels of products, promoted and shown through Plaintiff's Copyrights, include Amazon US, Plaintiff's TikTok, and Plaintiff's own online URL, providing global customers with a convenient purchasing experience. Plaintiff's Copyrights are displayed in

Plaintiff's online product listings and embodied in the products themselves through product packaging. Plaintiff's Copyrights are prominently displayed.

19. Plaintiff invests substantial resources in Plaintiff's Copyrights and corresponding brand development, enhancing brand and product influence through marketing and advertising. Plaintiff also continually optimizes product pages and customer service to further improve customer satisfaction and loyalty.

20. Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Copyrights. Over time, Plaintiff has invested heavily in the Plaintiff's Copyrights and respective product.

21. The above U.S. registration for the Copyrights-in-Suit are valid, subsisting, and in full force and effect. *See* **Exhibit A**.

22. Plaintiff's Copyrights have become widely known from its unique elements, design and features, and as such, Plaintiff's Copyrights, and the respective products, have become recognized by consumers as high quality products sourced from Plaintiff. Over time, Plaintiff's Copyrights and the respective products, became popular, resulting in Defendant copying the Plaintiff's Copyrights.

23. The sales of products under Plaintiff's Copyrights are significant, reflecting strong market recognition, stable brand development, and public recognition of Plaintiff's Copyrights.

24. Plaintiff became aware of Defendant who also started to sell products, under the Copyrights-in-Suit, which are virtually identical to Plaintiff's products embodied in the Copyrights-in-Suit. As such, Plaintiff filed this action to combat this Seller Alias listed on **Schedule A** who is harming Plaintiff by offering to sell, selling, advertising, and/or shipping unlicensed products under the Copyrights-in-Suit.

25. The influx of and wide-spread use of infringing and derivative copies of Plaintiff's Copyrights on the exact same products led to a sharp drop in revenue.

26. After Defendant entered the online marketplace – along with other infringers, utilizing infringing and/or derivative copies of Plaintiff's Copyrights, Plaintiff has lost an estimated $73,734.83 in profit, being about $884,817.96 per year in lost profits.

27. This infringing behavior by Defendant severely impacts Plaintiff's Copyrights rights and undermines the fair competition environment in the market. The sales of Plaintiff's products through the Copyrights-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded.

28. The infringing behavior of this Seller Alias has diminished Plaintiff's Copyrights rights and resulted in loss of exclusivity and control of creative content. Plaintiff has not been able to realize the return of investment in the Copyrights-in-Suit.

29. Plaintiff has lost control over the rights in the Plaintiff's Copyrights, lost Plaintiff's and Plaintiff's products reputation, associated goodwill of Plaintiff's Copyrights, and ability to exploit the protected works. Plaintiff has also lost profit, market share, and sales volume.

30. Plaintiff has not entered a contract with or licensing agreement with Defendant for the Copyrights-in-Suit. Defendant is not an authorized seller of products bearing or otherwise using Plaintiff's Copyrights.

31. Defendant is a partnership, individual, and/or unincorporated association operating as a fictitious seller alias on an online platform who targets sales to Illinois residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). *See* **Exhibit C**.

32. Defendant targets Illinois consumers by advertising, offering to sell, and standing ready, willing and able to sell and ship, and upon information and belief, has sold and shipped, Infringing

Products to the United States, including Illinois, using infringing and derivative copies of Plaintiff's Copyrights. *See* **Exhibit B**.

33. Based on the seller alias name and research of Defendant, Defendant resides and operates in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Aa a result, Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). *See* **Exhibit C**.

34. A search of Defendant's fictitious address via Google, if any, does not return the same fictitious business name, respectively, nor any other reliable, correlated entity. *See* **Exhibit C**.

35. Defendant's interactive site is in English and accepts U.S. Dollars. *See* **Exhibit B**.

36. Through the fictitious seller alias and the anonymity allowed by marketplace platforms, Defendant purposely conceals their true identity and the full scope of their operations. *See* **Exhibit C**.

37. Defendant has the opportunity to operate under a proper individual, partnership, or entity name, but Defendant willfully chooses to operate under a fictitious seller alias.

**DEFENDANT'S INFRINGING CONDUCT**

38. While the seller alias (or Defendant) alone may appear as some small-time infringer, the actions of Defendant are of enormous detriment.

39. The infringement empire Defendant participates in and takes advantage of is a $500+ ***Billion*** Dollar industry. The U.S. Department of Homeland Security recognizes this serious threat posed by Defendant, detailing the expansive nature as seen below (*See* **Exhibit E**):




40. Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit D**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

41. "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit E**, Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id*. at 39.

42. Based on the limited information available and Google research, Defendant engaged in fraudulent conduct when registering the seller alias by providing false, misleading and/or incomplete information to e-commerce platform(s) to prevent discovery of their true identity, location, and/or the scope of their e-commerce operations. *See generally* **Exhibit C**.

43. Defendant has the ability to quickly and easily change e-commerce store data, including but not limited to titles, descriptions, images, videos, Date First Available, and other product description information.

44. Defendant sells, offers for sale, distributes, and advertises goods utilizing infringing and derivative versions of Plaintiff's Copyrights.

45. Defendant uses infringing and/or derivative copies of Plaintiff's Copyrights on at least their respective product pages, seller pages, advertisements, and/or product packaging. *See* **Exhibit B**.

46. As seen above, the e-commerce store operating under the seller alias includes content and images that make it very difficult for consumers to distinguish such store from an authorized retailer of products under Plaintiff's Copyrights.

47. Defendant concurrently employs and benefits from substantially similar advertising and marketing strategies as Plaintiff. For example, Defendant facilitates sales by designing the e-commerce store(s) operating under the seller alias so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers of authorized products embodying Plaintiff's Copyrights. *See* **Exhibit B**.

48. Defendant uses fictitious name(s) to keep selling despite Plaintiff's actions.

49. Defendant has bank accounts outside this Court's reach and moves money there regularly to avoid paying any monetary judgment. In fact, financial records from similar Schedule A cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis, and upon notice of a lawsuit, to avoid paying any judgment ordered by a court of law in the United States.

50. Defendant is involved in, reviews, and/or is in communication with other seller aliases via WeChat and QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com,

and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings and aliases.

51. The natural and intended byproduct of Defendant's actions is the erosion and destruction of the goodwill and reputation associated with Plaintiff's Copyrights and the destruction of the legitimate market sector in which it operates.

52. Defendant is causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods and/or creative works, (ii) causing an overall degradation of the value associated with Plaintiff's Copyrights and respective products therein, and (iii) increasing Plaintiff's overall cost to market and educate consumers about its products embodied in Plaintiff's Copyrights.

53. The e-commerce store operating under the seller alias advertises, offers to sell, and stands ready, willing, and able to, and upon information and belief does, sell and ship Infringing Products to the United States, including Illinois. *See* **Exhibit B**.

54. Defendant's use of the Plaintiff's Copyrights in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

55. Defendant's infringing and/or derivative use of Plaintiff's Copyrights has caused significant financial loss to Plaintiff.

56. Defendant will continue to advertise, sell, and offer for sale products under Plaintiff's intellectual property, namely products containing in whole, or in part, Plaintiff's Copyrights, unless preliminarily and/or permanently enjoined.

**JURISDICTION AND VENUE**

57. This is an action for infringement of the Copyrights-in-Suit arising under 17 U.S.C. §501.

58. This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, et seq., under 28 U.S.C. §§ 1331 and 1338(a), (b).

59. Personal jurisdiction is proper because Defendant directly targets consumers in the United States, including in Illinois, through at least the fully interactive commercial Internet store operating under the Seller Alias, where Defendant advertises, displays, offers to sell, and stands ready, willing and able to, and upon information and belief does, sell and ship Infringing Products to residents within the Northern District of Illinois. *See* **Exhibit B**. As a result, Defendant has purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their copyright infringement activities at the state; Plaintiff's injuries stems from the Defendant's forum-related activities of advertising, offering to sell, selling, and/or shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

60. Defendant is reaching out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can, and upon information and belief have, purchased products utilizing infringing and/or derivative copies Plaintiff's Copyrights. Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in United States Dollars, are in English, and have sold and shipped Infringing Products to Illinois residents.

61. Defendant is systematically directing or targeting their business activities at consumers in the United States, including Illinois, through at least the Internet platform, under the Seller Alias,

through which consumers in the United States, including Illinois, can and do view Defendant's Infringing Product listings, communicate with Defendant regarding their respective Infringing Products, place orders for Defendant's Infringing Products, and ship Defendant's Infringing Products to United States addresses, including Illinois. *See* **Exhibit B**. Despite being from a foreign nation, Defendant's e-commerce store is made to confuse consumers that they and/or their products originate in the United States, and the store is in English and accepts USD. *See* **Exhibit B**. The level of interactivity is high, where consumers of Illinois can: communicate to Defendant about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their respective Illinois addresses. Defendant, through their fictitious Seller Alias, utilizes marketplace platforms for the sole purpose of conducting business transactions, as described above. The Internet webpages owned and operated by Defendant, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendant are extremely high and establish regular business with the U.S. and Illinois.

62. Alternatively, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendant's Infringing Product listings and based on the Seller Alias being of foreign origin, Defendant is a foreign entity, individual, or unincorporated association not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

63. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendant has committed acts of infringement in and has significant contacts within this District – as described above, and Defendant as delineated in Schedule A is directly targeting their business activities of offering to sell, selling, advertising, and shipping the Infringing Products to this District.

64. Based on information found on Defendant's Infringing Product listings and based on the Seller Alias itself, Defendant is a foreign entity or individual, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

65. Further, venue is proper in this district under 28 U.S.C. § 1400 because Defendant is subject to the court's personal jurisdiction and therefore resides in this judicial district or may be found here.

**COUNT I**
**INFRINGEMENT OF PLAINTIFF'S COPYRIGHTS**

66. Plaintiff hereby re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

67. Plaintiff is the true and correct owner of Plaintiff's Copyrights. *See* **Exhibit A**.

68. Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyrights.

69. Plaintiff's Copyrights are original works.

70. Under 17 U.S.C. § 106, Plaintiff has the exclusive rights and privileges to reproduce, prepare derivative works, distribute copies, and import copies into the United States, of the Plaintiff's Copyrights.

71. Defendant infringed Plaintiff's exclusive copyrights by creating infringing and/or derivative works, copying, displaying, advertising, and/or distributing works to the public based upon Plaintiff's Copyrights in violation of 17 U.S.C. § 106, as seen in **Exhibit B**.

72. Defendant's Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging, incorporate and copy Plaintiff's Copyrights. Defendant's copying constitutes improper appropriation of Plaintiff's Copyrights.

73. Defendant's Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging are unlawful copies and/or derivatives of Plaintiff's Copyrights.

74. Defendant had access to Plaintiff's Copyrights.

75. Due to Defendant's infringing behavior as alleged herein, Defendant has obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Copyrights.

76. Defendant has been and is now actively infringing the Copyrights-in-Suit in the State of Illinois, in this judicial district, and other jurisdictions in the United States by displaying, advertising, selling, and offering to sell products utilizing derivative and/or infringing copies of the Copyrights-in-Suit.

77. Defendant's conduct constitutes willful and direct copyright infringement. The virtually identical nature between Plaintiff's Copyrights and Infringing Products and/or images used in advertising or displaying or packaging the products sold by Defendant further evidences the willful and direct infringement by Defendant.

78. Due to Defendant's acts of infringement, Plaintiff has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

79. The harm caused to Plaintiff is irreparable.

80. Defendant had actual or contructive knowledge of Plaintiff and/or Plaintiff's Copyrights before and during Defendant's advertising, offering for sale, and sale of Infringing Products.

81. Defendant's conduct as alleged herein was willful, reckless, and/or with knowledge.

**COUNT II**
**VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

82. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

83. On information and belief, Plaintiff alleges that Defendant knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of Plaintiff's Copyrights. Such conduct included, without limitation, creating derivative works, creating products which use Plaintiff's Copyrights, and/or advertising, offering for sale, and/or selling products under such infringing and/or derivative works that Defendant knew, or should have known, were not authorized to be published by Defendant.

84. On information and belief, Plaintiff alleges that Defendant is vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendant profited in connection with the Infringing Products and advertising of infringing and/or derivative copies of Plaintiff's Copyrights, and were able to supervise the distribution, broadcast, and publication of the Infringing Products.

85. By reason of the Defendant's acts of contributory and vicarious infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

86. Due to Defendant's acts of copyright infringement as alleged herein, Defendant has obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in Plaintiff's Copyrights.

87. Defendant has committed acts of copyright infringement, as alleged above, which were willful, intentional and/or malicious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a. Entry of temporary, preliminary and permanent injunctions, pursuant to 17 U.S.C.§ 502(a) and Federal Rule of Civil Procedure 65, enjoining Defendant, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, displaying, advertising or promoting, distributing, selling or offering to sell Infringing Products and/or Plaintiff's Copyrights.

b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplace in Schedule A, identify any e-mail address(es) known to be associated with Defendant's respective Seller ID and Seller Alias, and cease facilitating access to any or all e-commerce stores through which Defendant engages in the promotion, advertising, offering for sale, and/or sale of Infringing Products and/or Plaintiff's Copyrights.

c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplace in Schedule A, permanently remove any and all listings offering for sale

or advertising Infringing Products and/or Plaintiff's Copyrights via the e-commerce stores operating under the Seller ID and Seller Alias, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendant to promote, advertise, display, offer for sale and/or sell Infringing Products and/or Plaintiff's Copyrights.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplace in Schedule A, immediately cease fulfillment of and sequester all goods of Defendant or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order requiring Defendant to account to and pay Plaintiff actual damages and/or Defendant's profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504.

f. Entry of an Order finding that this case is exceptional and an award to Plaintiff its attorney fees and costs as provided by for under 17 U.S.C. § 505.

g. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial

institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

h. Entry of an award of pre- and post-judgment interest on the judgment amount.

i. Entry of an order for any further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED December 9, 2025

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*